```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA        :
                                :       MEMORANDUM
v.                              :       OPINION AND ORDER
                                :
JOHN ASMODEO,                   :       15 CR 327 (VB)
                    Defendant.  :
--------------------------------------------------------x
```

Now pending is defendant John Asmodeo's renewed motion to reduce his term of imprisonment to "time served, and immediately release him to begin his already-imposed 10 year term of supervised release, and any additional term of supervised release, with a special condition of home confinement not to exceed November 14, 2027." (Doc. #107 at 1). Asmodeo claims that the current COVID-19 pandemic "poses extraordinary risks" to his health, which, combined with his "rehabilitation" while in prison, constitute "extraordinary and compelling reasons" warranting the requested reduction. (Id. at 5).

For the following reasons, the motion is DENIED.

The COVID-19 pandemic is an unprecedented worldwide catastrophe. But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like Asmodeo, whose medical conditions and risk of contracting the virus cannot, by any reasonable definition, be deemed "extraordinary and compelling." See 18 U.S.C. § 3582(c)(1)(A)(i).

First, Asmodeo's offense was exceptionally serious. He pleaded guilty to one count of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), (e). Specifically, Asmodeo admitted to engaging in sexual intercourse with a 12-year-old girl in 2003, when he was 20 years old. He used a camera to make a video recording of the encounter and later transferred the video

1

to a disk, which he gave to another individual. Asmodeo's sexual abuse of the child continued until she was 15.

In addition, although the Court exercised its discretion not to consider certain uncharged conduct at the time of sentencing, the record reflects that Asmodeo's sexual exploitation of children was not limited to his abuse of a single victim. Rather, in 2013, when Asmodeo was 30, he used a hidden camera on multiple occasions to videotape a 10-year-old girl changing into a bathing suit in Asmodeo's bathroom, and, in the middle of the night, he took photographs of the girl's clothed genital area while she slept. Also in 2013, defendant engaged in sexually explicit video chats with two girls who were then 12 and 14 years old. And by 2014, Asmodeo had amassed a vast collection of child pornography, including thousands of still images and videos.

On January 31, 2018, after careful consideration of all the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and the history and characteristics of the defendant, the Court sentenced Asmodeo to 180 months' imprisonment, followed by ten years of supervised release. 180 months was both the mandatory minimum under Section 2251 and the applicable sentencing range under the Guidelines. The Court determined that the sentence was sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and, importantly, protect the public from further crimes of the defendant. To date, Asmodeo has served sixty-four months of his sentence, or about thirty-six percent of the sentence imposed.

Second, Asmodeo has not demonstrated "extraordinary and compelling reasons" to warrant the extraordinary relief being sought—namely, early termination of a lawfully imposed prison sentence—taking into account both his medical history and his risk of exposure to the virus. Asmodeo is thirty-six years old. He is neither elderly nor infirm. He has relapsing-

remitting multiple sclerosis ("MS"), and his medical records indicate that Bureau of Prisons ("BOP") medical staff have consistently monitored his condition and treated his MS, including with glatiramer acetate injections and several other medications. Asmodeo does not suffer from hypertension, chronic lung problems, or any cardiovascular or respiratory conditions—conditions which would place Asmodeo at a heightened risk of complications from COVID-19. Notwithstanding his MS, Asmodeo's condition is stable.

Asmodeo's medical records indicate that by the end of March 2020, his treating physician "counseled him to stop using [glatiramer acetate injections] because of COVID-19-prompted concerns that the drug could adversely affect his immune system." (Doc. #107 at 14–15). Although Asmodeo did stop receiving such injections, administrative notes in Asmodeo's medical file from May 18 and May 20, 2020, indicate that the treating physician revised her earlier guidance, and noted that "[r]ecent research states [Asmodeo] may resume the medication." (Doc. #108 Ex. B at 4–7). Such statement reflects BOP's view that receiving injections of glatiramer acetate does not put Asmodeo at increased risk of severe infection and worsened outcomes if he were to contract the virus.

Of course, Asmodeo is at risk for contracting the virus at FCI Danbury. However, the Court is persuaded by the government's comprehensive submission that FCI Danbury has taken substantial measures to respond to the COVID-19 threat at its facility, thereby mitigating its spread, and has the means to competently care for its inmate population. Indeed, Asmodeo has tested negative for the virus. In addition, the doctors providing care at FCI Danbury have treated Asmodeo's MS based on the latest scientific information available about COVID-19 and the virus's interactions with other medications. FCI Danbury's handling of Asmodeo's medical

situation and the virus itself is demonstrative of its ability to provide sufficient care to Asmodeo, even if he were to contract COVID-19.

In support of his motion, Asmodeo likens his circumstances to that of David Gutman, who suffers from MS and was released for "extraordinary and compelling reasons." See United States v. Gutman, 2020 WL 2467435 (D. Md. May 13, 2020). Even though the court credited Gutman's concerns that his MS "renders him especially susceptible to COVID-19 because he must ingest an immunosuppressant, methylprednisolone, to treat the illness," id. at *2, Gutman's case is easily distinguishable from Asmodeo's. First, Gutman had two months left to serve on a six-month sentence, whereas Asmodeo still has 116 months, or sixty-four percent, of his 180-month sentence left to serve. Moreover, Gutman, unlike Asmodeo, suffers from hypertension—the Court noted "50% of all adults hospitalized in the United States for COVID-19 suffered from hypertension." Id. at *2. And the crime Gutman was convicted of, wire fraud, does not remotely implicate the same risks to the community as does Asmodeo's.

Asmodeo also relies on United States v. Curtis, 2020 WL 1935543 (D.D.C. Apr. 22, 2020), but that case too is distinguishable. Although Asmodeo and Carlos Curtis were both in prison for sex-related offenses involving minors, and both suffer from MS, that is where the similarities end. Unlike Asmodeo, Curtis "served 17 years of his life sentence," "lost 85% of his vision," and "spends all of his days confined to an electric wheelchair or bed." Id. at *1. Thus, the court concluded Curtis did not pose a threat to the community, or children, in his current state, noting "[Curtis's] physical limitations seriously undermine the notion that defendant might engage in further criminal conduct." Id. at *5. Asmodeo has no such physical limitations.

Finally, as required by Section 3582(c)(1)(A), the Court has considered "the factors set forth in section 3553(a) to the extent that they are applicable." The exceptionally serious nature

of Asmodeo's offense warranted a lengthy sentence at the time it was imposed; nothing has changed to warrant cutting that sentence by nearly two-thirds. Indeed, the sentence was designed to promote respect for the law and provide just punishment for the offense. To so dramatically reduce the sentence in light of the current public health crisis would neither be just nor promote respect for the law; if anything, it would promote disrespect for the law. And shortening Asmodeo's sentence would undermine two other critical sentencing objectives in this case: the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. These sentencing factors not only supported the sentence at the time it was imposed, they also weigh strongly against Asmodeo's early release, especially given the other sexually predatory conduct in which Asmodeo was involved over a multi-year period.

      Asmodeo argues he no longer presents a danger to the community because he has received no disciplinary tickets in prison, has completed educational courses, and has held jobs at the prison. (See Doc. #107 at 22). Although the Court applauds Asmodeo's efforts so far, it is not persuaded that he is sufficiently rehabilitated to be released now. There are no children in prison; thus, Asmodeo's conduct while incarcerated in no way establishes that he is no longer a danger to the community, especially its young and vulnerable members. Moreover, there are less protections in place for children amidst the current pandemic, given the lack of in-person schooling. This is yet another reason why Asmodeo's release would undermine the still applicable sentencing objective in this case, protecting the public from further crimes of the defendant.

Accordingly, defendant John Asmodeo's motion for a reduction of his term of imprisonment is DENIED.

Dated: June 17, 2020
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge